PENNWALT CORPORATION v PUBLIC SERVICE COMMISSION
#2

Docket No. 70881. Submitted February 7, 1984, at Lansing.—Decided
    August 7, 1984. Leave to appeal applied for.

    Pennwalt Corporation purchased industrial steam and electric
        service from The Detroit Edison Company under a special
        contract. Rates were set by the Public Service Commission in
        hearings which involved only Pennwalt, Detroit Edison, and
        the commission. A rate application was pending before the
        commission in August, 1977, when the commission notified
        Pennwalt that the rates charged to it might be included in an
        order to be issued in a general rate increase application by
        Edison. Pennwalt objected to being included in the general rate
        case, but the commission ruled that Pennwalt was not to be
        excluded. The subsequent opinion and ruling in the general
        rate case were affirmed by the Ingham Circuit Court, Jack W.
        Warren, J. Pennwalt appealed, alleging that the Public Service
        Commission's policy of not allowing a utility to file a rate
        application while a previous rate application is still pending
        precluded the commission from determining Detroit Edison's
        rates to be applied to Pennwalt in Edison's general rate appli-
        cation since the prior application concerning the Pennwalt
        rates was still pending. Held:

        The commission's policy does not preclude inclusion of Penn-
    walt in the general rate case where it was the commission itself
    which sought to include all of a utility's customers in a single
    rate hearing. The commission's policy simply did not apply to
    the facts in this case.

        Affirmed.

PUBLIC UTILITIES — RATE APPLICATIONS — PUBLIC SERVICE COMMIS-
    SION.

    The Public Service Commission's policy of not allowing a utility
        to file a rate request while a previous request is still pending
        did not bar the commission from including a rate request
        involving a single industrial customer with a general rate

REFERENCE FOR POINTS IN HEADNOTE
64 Am Jur 2d, Public Utilities §§ 81, 240.

application where the commission itself stated that in the future it would require the industrial customer to be included in the utility's general rate applications.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Peter S. Sheldon* and *Kester K. So),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey* and *R. Philip Brown,* Assistants Attorney General, for the Public Service Commission.

*Leon S. Cohan, A. Robert Pierce, Jr.,* and *David L. Clark,* and *Fischer, Franklin, Ford, Simon & Hogg* (by *George Hogg, Jr.),* for The Detroit Edison Company.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. Plaintiff has filed an appeal as of right from the April 4, 1983, order of Ingham County Circuit Court Judge Jack W. Warren which affirmed the opinion and order of the Michigan Public Service Commission, dated September 28, 1978, in case number U-5502.

Plaintiff seeks to have the Michigan Public Service Commission opinion and order vacated as it relates to including plaintiff in case U-5502 and adjusting rates and charges to be assessed to plaintiff by The Detroit Edison Company for industrial process steam and electric service, and to have a refund ordered to be paid by The Detroit Edison Company to plaintiff as to those revenues collected pursuant to the increased rates and charges authorized by the Michigan Public Service Commission

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which are found to be in excess of those which are lawful and proper.

In the complaint, plaintiff alleged that effective April 1, 1964, and pursuant to order of the commission dated April 4, 1963, plaintiff sold to The Detroit Edison Company all of its steam and its condensing and non-condensing generation facilities located at its Wyandotte, Michigan, plant for $3,500,000. The Detroit Edison Company agreed to furnish plaintiff with industrial process steam and electric service for a term of 25 years, until March 31, 1989, pursuant to the terms and provisions of a "Steam Electric Supply Agreement". Subsequent to the initial effective date of the general agreement and the Steam Electric Supply Agreement, the rates specified therein have been increased from time to time, pursuant to Michigan Public Service Commission proceedings involving only Pennwalt Corporation, The Detroit Edison Company, and the Michigan Public Service Commission. The increases were approved by the commission on August 31, 1970, in case number U-3694; on November 25, 1974, in case number U-4296; on July 26, 1976, in case number U-4741; and on February 6, 1978, in case number U-5218. Each of those proceedings was separate and distinct from The Detroit Edison Company general rate cases wherein The Detroit Edison Company requested adjustments to electric and other miscellaneous rates assessed to its other customers, including industrial customers except those industrial power plant customers under special contract with it.

On July 20, 1977, The Detroit Edison Company filed a general reapplication requesting authority from the Michigan Public Service Commission to amend electric rate schedules and miscellaneous rate schedules for services rendered by it to vari-

ous classes of customers, excluding however, industrial power plant customers under special contract with it, of which plaintiff is one. That general rate case application was identified as MPSC case number U-5502. Notwithstanding the fact that The Detroit Edison Company had requested no adjustment in its application in that case with respect to rates and charges for industrial process steam and electric service provided plaintiff, the commission on August 1, 1977, issued an amended notice of hearing advising that rates and charges assessed by The Detroit Edison Company for the sale of industrial process steam and electricity to industrial power plant customers, including plaintiff, were relevant to The Detroit Edison Company application and that those rates might be included in the commission's investigation and might be the subject of a commission order.

At the time The Detroit Edison Company filed its July 20, 1977, application for rate relief in case number U-5502 and at the time the commission issued its amended notice of hearing on August 1, 1977, no final decision had been rendered by the commission in case number U-5218, the then-pending rate case before the commission wherein The Detroit Edison Company was requesting increases in rates and charges assessed to plaintiff for industrial process steam and electric service. Following the amended notice of hearing, plaintiff filed a special appearance and, in the alternative, petitioned to intervene in the commission proceedings. Plaintiff's counsel objected to any aspect of the proceedings in case number U-5502 that could subject the rates and charges assessed by The Detroit Edison Company to plaintiff for industrial process steam and electricity to modification or adjustment in that case. A hearing officer ruled

that the rates and charges assessed by The Detroit Edison Company to plaintiff, as well as to other industrial power plant customers under special contract with The Detroit Edison Company, could be subject to possible modification in that case and, accordingly, ruled that plaintiff was not to be excluded from the proceedings in case number U-5502. On September 29, 1977, plaintiff filed with the commission a request for leave to appeal that ruling. The request for leave to appeal was granted on October 3, 1977, but no further action was taken by the commission in connection with plaintiff's appeal of that ruling until a final opinion and order was rendered by the commission in case number U-5502, approximately one year later, on September 28, 1978, which essentially affirmed the recommendations of the hearing officer as they related to plaintiff.

On appeal, plaintiff argues that the commission's own practice has been to dismiss a utility's application for a rate increase when filed before its previous application has been decided, and that there is no valid basis for distinguishing this case factually from those prior cases which did not allow "pancaking", merely because the commission itself, rather than defendant utility, raised the rate increase issue in the second application.

The defendants argue that the commission may lawfully set rates for all of The Detroit Edison Company's customers in one general rate proceeding, even if such a proceeding overlaps a special rate proceeding, since no statute specifically prohibits "pancaking", and the commission's "anti-pancaking" policy has never been promulgated as a rule. Further, it is one thing to say that the commission has the authority to enforce the "anti-pancaking" policy, but it is quite another to say as

plaintiff does that the commission must apply it in this case. The purpose of the "anti-pancaking" policy was to prevent the filing of one rate case on top of another. That problem does not arise in this case, because the facts are different since it was the commission itself which issued the amended notice of hearing providing that the steam and electric rates for Edison's two industrial power plant customers, plaintiff and Port Huron Paper Company, would be included in rate case number U-5502. The commission stated that it would in the future require plaintiff and Port Huron Paper Company to be included in The Detroit Edison Company's general rate applications. Thus, this case was, in the view of the commission, the beginning of a new and superior method of setting rates for The Detroit Edison Company.

This Court holds that there was no error in the Michigan Public Service Commission's ruling that the "anti-pancaking" policy developed by the commission for the speedy administration of justice was not applicable to the facts of this case where *it* now thought that all of a utility's customers should be involved in a single rate hearing, as opposed to the prior practice of separate rate hearings for industrial process steam and electric service. The commission's self-created policy against "pancaking" was intended to deter the continual build-up of major rate cases and was not intended to prohibit or bar the attempt to put these industrial power plant customers "in phase" with the rest of The Detroit Edison Company's ratepayers by bringing the Port Huron Paper Company's and Pennwalt Corporation's steam and electric rates up to a more recent test year level.

The following excerpt from the circuit court's opinion is quoted with approval:

"The MPSC has based its anti-pancaking rule on MCL 460.6a(2); MSA 22.13(6a)(2), which empowers the commission to adopt rules to enable it to reach a final decision on an application within nine months after it is filed. The commission has held that since the Legislature expressed a policy in that statute favoring timely action in rate cases, and since the practice of pancaking rate applications prolongs the final decisions in earlier applications, the practice is inconsistent with the timely disposition of rate cases. The commission also based the rule on logic. The reasoning behind the rule is as follows: Since each MPSC decision determines rates to be applied in the future, why should the commission decide the same issue in separate proceedings? The commission then has developed the anti-pancaking rule in order to avoid dealing with more than one application at a time. MPSC, Opinion and Order, Case No. U-5110, pp 3, 4 (June 28, 1976).

"Here the commission did not depart from its anti-pancaking rule, it merely held that the rule did not apply to this situation. The utility did not include Pennwalt's rates in this application. The commission itself decided to include Pennwalt because it intended to require Pennwalt's rates to be decided with the general rates in all future proceedings. MPSC, Opinion and Order, Case No. U-5502, p 10 (September 28, 1978). Thus, the dangers associated with allowing a utility to file a succession of rate applications are not present in this situation."

Affirmed.